IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SIERRA CLUB, ) | |
| 85 Second Street, 2nd Floor ) | |
| San Francisco, CA 94105 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No.  1:08-cv-1183** |
| CITY OF HOLLAND, MICHIGAN ) | Paul L. Maloney |
| 270 S. River Ave ) | Chief U.S. District Judge |
| Holland, MI 49423, and ) | |
| ) | |
| HOLLAND BOARD OF PUBLIC WORKS ) | |
| 625 Hastings Avenue ) | |
| Holland, MI 49423 ) | |
| ) | |
| Defendants. ) | |
| ) | |

___

# FIRST AMENDED COMPLAINT
___

Plaintiff, Sierra Club, by its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. This is an action for civil penalties, declaratory and injunctive relief, with costs and fees, under the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7401, *et seq.* and the federally-enforceable State Implementation Plan developed by the State of Michigan.

2. Sierra Club seeks an order requiring the Defendants, the City of Holland, Michigan and the Holland Board of Public Works, to comply with the requirements of the Act and the Michigan State Implementation Plan at the James De Young Generation Station (the De Young Plant) and to forfeit penalties for violations of the CAA at the De Young Plant.

3. The De Young Plant is a coal- and natural gas-fired power plant that emits thousands of tons of carbon dioxide, nitrogen oxides and sulfur oxides every year as well as significant amounts of particulate matter, carbon monoxide, mercury, and other hazardous air pollutants. Those pollutants contribute to climate change, respiratory distress, cardiovascular disease, and premature mortality. Nitrogen oxides and sulfur oxides in the air also contribute to acid rain, which sterilizes lakes and damages property. Presence of those pollutants in the atmosphere is associated with increased hospital admissions and emergency room visits.

4. On numerous occasions, Defendants modified and thereafter operated the generating units at the De Young Plant: (i) without first applying for and/or obtaining appropriate permits authorizing the modification and operation; (ii) without meeting required emission limits including "best available control technology"; (iii) without meeting "lowest achievable emission rates" for nitrogen oxides; (iv) without installing appropriate technology to control emissions of nitrogen oxides, sulfur dioxides, particulate matter, and other pollutants; and (v) without accurately reporting the facility's compliance status with its Renewable Operating Permit as required by the Act, its implementing regulations, and the Michigan State Implementation Plan.

5. As a result of the Defendants' operation of the De Young Plant following those unlawful modifications, and in the absence of appropriate controls, unlawful amounts of various pollutants have been, and continue to be, released into the atmosphere, aggravating air pollution locally and far downwind from the plant.

6. An order from this court directing Defendants to apply for and obtain the required permits, which necessitate compliance with best available control technology and lowest achievable emission rate limits, installation of modern pollution controls and a demonstration to

the appropriate regulatory agencies that emissions from the facility will not result in unlawful amounts of air pollution, will improve air quality for thousands of Americans, including Sierra Club's members.  It will also reduce illness and protect lakes and streams from further degradation due to the fallout from acid rain and mercury deposition.

      7.     In addition, Defendants failed to comply with the Act's requirements to submit an application seeking case-by-case maximum achievable control technology limits for the control of hazardous air pollutants at the De Young Plant.  An order from this court directing Defendants to submit such an application will reduce emissions due to the stringent pollution limits that will result from such application and subsequent action by the state and federal agencies.  Moreover, an order from this court directing Defendants to submit an application will protect Sierra Club's procedural rights by triggering an opportunity for public comment and additional administrative procedures through which Sierra Club will seek to protect its members by advocating for lower emission limits.

      8.     If Defendants comply with the law, including the Prevention of Significant Deterioration program, 42 U.S.C. §§ 7470-7479; the Nonattainment New Source Review program, 42 U.S.C. §§ 7501-7515; Hazardous Air Pollutant program, 42 U.S.C. § 7412; Title V of the Act, 42 U.S.C. §§ 7661-7661f; and the Michigan State Implementation Plan, the De Young Plant will significantly decrease its annual air pollution emissions.

## PARTIES

      9.     Plaintiff Sierra Club is an incorporated, not-for-profit organization with its headquarters at 85 Second Street, 2nd Floor, San Francisco, California and its Michigan Chapter Office at 109 E. Grand River Avenue, Lansing, Michigan. Its purpose is to preserve, protect, and

enhance the natural environment. Its mission includes reducing and eliminating pollution from the mining, combustion, and waste disposal of coal, which negatively affects Sierra Club's members as well as members of the public. Sierra Club has over 1.3 million members and supporters nationwide, including approximately 18,000 members in Michigan.

10. Defendant City of Holland, Michigan is a municipality in the State of Michigan that owns the De Young Plant.

11. Defendant Holland Board of Public Works is a division of the City of Holland that provides utility services to the Holland area and operates the De Young Plant.

12. Defendant City of Holland, Michigan is a "person" within the meaning of Sections 302(e) and 304(a)(3) of the Act, 42 U.S.C. §§ 7602(e), 7604(a)(1) and (a)(3).

13. Defendant Holland Board of Public Works is a "person" within the meaning of Sections 302(e) and 304(a)(3) of the Act, 42 U.S.C. §§ 7602(e), 7604(a)(1) and (a)(3).

## **STANDING**

14. Sierra Club has members who live, work, and recreate in the City of Holland and Ottawa County, Michigan, as well as other areas downwind from the De Young Plant. These members are negatively impacted by air pollution emissions from the De Young Plant. The health and welfare of Sierra Club's members, as well as their enjoyment of outdoor activities, has been and continues to be harmed by air pollution from the De Young Plant.

15. An order of this Court enjoining Defendants from operating the De Young Plant and/or requiring Defendants to submit the required applications, procure the necessary permits, install the necessary pollution controls, and meet all applicable emission limits at the De Young

Plant will redress the injuries to Sierra Club's members because the result will be significant reductions in air pollution from the plant.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604, 28 U.S.C. §§ 1331, 1355, and 2201. The relief requested by the Plaintiff is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 7604.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in, and, all or a substantial part of the events or omissions giving rise to the claims herein occurred in the Western District of Michigan. Venue is also proper pursuant to 42 U.S.C. § 7604(c)(1) because this action is for violations at the De Young Plant, which is located within the Western District of Michigan.

## NOTICE

18. On December 22, 2008, Sierra Club provided notice to the Defendants, the State of Michigan, and the United States Environmental Protection Agency (EPA) Administrator via certified mail of those claims in this Amended Complaint for which notice is required in accordance with the requirements of CAA Section 304(b), 42 U.S.C. § 7604(b) and 40 C.F.R. part 54.

## GENERAL ALLEGATIONS

### The De Young Plant

19. Defendants are government entities who own and are responsible for the operations of the De Young Plant.

20. The De Young Plant consists of three coal- and natural gas-fired electrical generating boilers and associated equipment known as Units 3, 4 and 5. These three units have the capability of generating a total of 60 megawatts (MW) of electricity.

21. Boiler 3 was manufactured in 1950 and serves a generator rated at a capacity of approximately 11.5 MW.

22. Boiler 4 was manufactured in 1960 and serves a generator rated at a capacity of approximately 19 MW.

23. Boiler 5 was manufactured in 1967 and serves a generator rated at a capacity of approximately 29.5 MW.

24. Boilers 3 and 4 are commercial or industrial boilers as those terms are used in 40 C.F.R. Part 63, Subpart B, Table 1.

25. Boiler 5 is an Electric Utility Steam Generating Unit as that term is used in 40 C.F.R. § 52.21(b)(31).

26. Coal is the predominant fuel for all three boilers at the De Young Plant.

27. The De Young Plant is located at 64 Pine Avenue, Holland, Ottawa County, Michigan.

28. The De Young Plant has the potential to emit in excess of 100 tons per year of the following pollutants: carbon dioxide, nitrogen oxides, sulfur dioxide, carbon monoxide, and particulate matter.

29. The De Young Plant is a "major emitting facility" as that term is used in 42 U.S.C. § 7475(a) and a "major stationary source" as that term is used in 40 C.F.R. § 52.21(a)(2), (b)(1), 40 C.F.R. § 51.165(a)(1)(iv), Appendix S and Michigan Rule 220.

30. The De Young Plant is a major source of "hazardous air pollutants" as that term is used in 42 U.S.C. § 7412.

31. The De Young Plant received its first Renewable Operating Permit from the Michigan Department of Environmental Quality in the year 2000.

## The Clean Air Act

32. The Clean Air Act requires that the EPA promulgate National Ambient Air Quality Standards (NAAQS), which are upper limits on air pollution, to protect public health and welfare, 42 U.S.C. § 7409.

33. The Act also requires each state to designate those areas within its boundaries where the air quality meets or exceeds NAAQS for each pollutant. An area that meets the NAAQS for a particular pollutant is termed an "attainment" area, whereas an area that exceeds the NAAQS is a "nonattainment" area. Areas for which there is insufficient information to determine compliance with NAAQS are "unclassifiable," 42 U.S.C. § 7407(d).

34. CAA Section 110, 42 U.S.C. § 7410, requires each state to adopt and to submit to EPA for approval a State Implementation Plan (SIP) that provides for the attainment and maintenance of the NAAQS. SIP requirements are federally enforceable in citizen suits under CAA Section 304(a)(1), 42 U.S.C. § 7604(a)(1).

35. To help ensure attainment and maintenance of the NAAQS, the Act requires a comprehensive new source review program with two main facets: (i) requirements governing the prevention of significant deterioration in areas designated as attaining the ambient air quality standards (the PSD program); and (ii) new source review requirements applicable to areas

designated as non-attainment for a particular pollutant (the so-called Nonattainment New Source Review (NNSR) program).

36. The PSD program and the NNSR program both impose a variety of requirements for new or modified sources that would increase emissions of regulated pollutants, including requirements that the source owner/operator obtain a pre-construction permit and take steps to control air pollutant emissions from the source.

37. At the times relevant to this complaint, Ottawa County was classified as either "attainment" or "unclassifiable" for all pollutants with the exception of the pollutant ozone.

38. Ottawa County was classified as "nonattainment" for ozone from approximately 1978 to 1996 and again from June 15, 2004 to May 16, 2007. *See* 69 Fed. Reg. 23857 (April 30, 1997); 72 Fed. Reg. 27425 (May 16, 2007).

## PREVENTION OF SIGNIFICANT DETERIORATION

39. The PSD program prohibits the construction and subsequent operation of a major emitting facility in an area designated as attainment unless a PSD permit has been issued, 42 U.S.C. § 7475(a). A "major emitting facility" is any source within one of the categories in 42 U.S.C. § 7479(1) that has the potential to emit 100 tons per year of any pollutant, or any other source (not within such categories) with the potential to emit 250 tons per year or more of any air pollutant, 42 U.S.C. § 7479(1). "Construction" means any physical change or change in the method of operation (including fabrication, erection, installation, demolition, or modification of an emissions unit) that would result in a change in emissions, 40 C.F.R. § 52.21(b)(8); *see also* 42 U.S.C. § 7479(2)(B).

40. The CAA requires states to adopt a SIP that contains emission limitations and such other measures as may be necessary to prevent significant deterioration of air quality in areas designated as attainment or unclassifiable, CAA Sections 110(a)(2)(C) and 161, 42 U.S.C. §§ 7410(a)(2)(C) and 7471. A state may comply with Sections 110(a) and 161 by having its own PSD regulations approved as part of its SIP by EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166. If a state does not have a PSD program that has been approved by EPA and incorporated into the SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 are incorporated by reference into the SIP. 40 C.F.R. § 52.21(a).

41. On August 7, 1980, EPA disapproved Michigan's PSD program and incorporated the federal PSD regulations into the Michigan SIP at 40 C.F.R. § 52.1180(b) (45 Fed. Reg. 52,741 (Aug. 7, 1980)). On March 10, 2003, EPA incorporated revised provisions of the federal PSD regulations, set forth in 40 C.F.R. § 52.21, into the Michigan SIP at 40 C.F.R. § 52.1180(b) (68 Fed. Reg. 11,323 (Mar. 10, 2003)).

42. The PSD program generally requires a person who wishes to construct or modify a major emitting facility in an attainment area to demonstrate, before construction commences, that construction of the facility will not cause or contribute to air pollution in violation of any ambient air quality standard or any specified incremental amount. 40 C.F.R. § 52.21(k).

43. Any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit. 42 U.S.C. § 7475(a); 40 C.F.R. § 52.21(i). "Major modification" means any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the Act. 40 C.F.R. § 52.21(b)(2)(i). "Significant" is defined at 40

9

C.F.R. § 52.21(b)(23)(i) in reference to a net emissions increase or the potential of a source to emit any of the criteria pollutants at a rate of emission that would equal or exceed pollutant specified thresholds (such as 40 tons per year for $SO_2$).

44. A major modification in an attainment area shall install and operate best available control technology (BACT) for each pollutant subject to regulation under the Act that it would have the potential to emit in significant quantities. 40 C.F.R. § 52.21(j); Mich. Admin. Code r. 336.2810(1) and (3). A major modification must also meet the applicable standards in 40 C.F.R. parts 60 and 61.

### NONATTAINMENT NEW SOURCE REVIEW REQUIREMENTS

45. Any major stationary source in a nonattainment area for ozone that intends to construct a modification that will significantly increase emissions of nitrogen oxides must first obtain an NNSR permit, 42 U.S.C. §§ 7502(c)(5), 7503, 40 C.F.R. § 51.165, Appendix S, and Michigan Rule 220.

46. A major modification in an ozone nonattainment area shall comply with lowest achievable emission rates (LAER) for nitrogen oxides and must off-set increased emissions pursuant to 42 U.S.C. § 7503, 40 C.F.R. § 51.165 and part 51, appendix S, and Rule 220 as incorporated into the Michigan SIP.

### TITLE V PERMIT REQUIREMENTS

47. Title V of the Act establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Clean Air Act, including PSD and NNSR requirements, are collected in one place. 42 U.S.C. § 7661-7661f.

48. EPA promulgated regulations establishing minimum elements of a Title V permit program to be administered by an air pollution control agency. 57 Fed. Reg. 32,250 (July 21, 1992). Those regulations are codified at 40 C.F.R. part 70.

49. The Act and the regulations provide that, after the effective date of any air permit program approved or promulgated under Title V, no source subject to Title V may operate except in compliance with a Title V permit. 42 U.S.C. § 7661a(a) and 40 C.F.R. § 70.7(b).

50. EPA granted interim approval of the State of Michigan's Title V operating permit program, which took effect on February 10, 1997. EPA granted final approval effective on November 30, 2001. 40 C.F.R. Part 70, Appendix A. Michigan's Title V operating permit program is codified at Mich. Admin. Code r. 336.1210-336.1218 ("Rule 210-218").

51. The Act and Michigan's Title V operating permit program have, at all relevant times, made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V. 42 U.S.C. § 7661a; Michigan's Rule 210(1).

52. The Act and Michigan's Title V operating permit program have, at all relevant times, required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the applicable SIP, including any applicable PSD requirement to comply with an emission rate that meets BACT and any applicable NNSR requirements. 42 U.S.C. § 7661c(a); 40 C.F.R. § 70.6(a)(1) and Michigan's Rule 213.

53. Rule 213 in Michigan's Title V operating permit regulations specified that all terms and conditions of a Title V operating permit that are designated in the permit as federally enforceable are enforceable by citizens under the provisions of the Clean Air Act.

54. The Act and Michigan's Title V operating permit program from the year 2000 onward have required an operator of an emissions unit to apply for a modification to a Title V permit when there is a modification pursuant to Title I of the Act. 42 U.S.C. §§ 7661a, 7661b; 40 C.F.R. § 70.5; Michigan Rules 215 and 216.

55. At all relevant times, the pertinent statutes and regulations required that any application for a Title V permit be complete and include, *inter alia*, the citation and description of all requirements applicable to the source and a description and compliance plan for requirements for which the source is not in compliance. 42 U.S.C. § 7661b(c), 40 C.F.R. §§ 70.5(a) and (c), and Mich. Stat. § 334.5507(1)(f).

56. The Act, Michigan's Title V operating permit program, and the De Young Plant's Renewable Operating Permit require an owner or operator to report major modifications made at the Plant from the year 2000 onward and to provide a certificate indicating compliance with the Renewable Operating Permit.

57. The Act requires each permit application for a Title V permit to identify the requirements applicable to the source, and, for those requirements that the source is not currently complying with, propose a schedule of compliance. 42 U.S.C. § 7661b(b); 40 C.F.R. § 70.5(c)(8).

## MAXIMUM ACHIEVABLE CONTROL TECHNOLOGY APPLICATION REQUIREMENTS

58. Owners and operators of industrial or commercial boilers in Michigan that are major sources of hazardous air pollutants are required to submit an application to the state and the United States Environmental Protection Agency seeking a case-by-case "maximum achievable control technology" (MACT) limit known as a MACT Part 2 application. 42 U.S.C. § 7412(j)(2); 40 C.F.R. § 63.52(e).

59. A case-by-case MACT limit and the obligation to submit a Part 2 Application are "standard[s] or other requirements" as that phrase is used in 40 C.F.R. § 70.2.

## PERMIT TO INSTALL REQUIREMENTS

60. Michigan's SIP requires any person that installs, constructs, reconstructs, or modifies any process or process equipment which may emit any criteria pollutant under the Act or any air contaminant to obtain a Permit to Install (PTI) prior to undertaking the installation, construction, reconstruction, or modification. Mich. Admin. Code r. 336.1201(1).

61. A PTI is required to operate a modified source until either a new PTI is issued or the requirements of the PTI are incorporated into a Renewable Operating Permit. Mich. Admin. Code r. 336.1201(6).

62. Michigan's SIP defines "modify" as making a physical change in, or change in the method of operation of, existing process or process equipment which increases the amount of any air contaminant emitted into the outer air which is not already allowed to be emitted under the conditions of a permit or order or which results in the emission of any toxic air contaminant into the outer air not previously emitted. Mich. Admin. Code r. 336.1113(e).

63. The SIP defines "process" as an action, operation, or a series of actions or operations at a source that emits or has the potential to emit an air contaminant. "Process equipment" means all equipment, devices, and auxiliary components, including air pollution control equipment, stacks, and other emissions points, used in a process. Mich. Admin. Code r. 336.1116(p) and (q).

**FIRST CLAIM FOR RELIEF**
(Commencing Construction of a Major Modification Without a PSD Permit and Modifying and Operating the Plant Without a Permit to Install)

64. Paragraphs 1 through 63 are realleged and incorporated herein by reference.

65. Beginning no later than 1988 and continuing at various times thereafter up to at least 2007, Defendants commenced construction of one or more major modifications, as defined in the Act, at the De Young Plant. These modifications included one or more physical changes or changes in the method of operation at each of the three generating units, including work involving various replacements or renovations of major components of the boilers, turbines, and associated equipment. The physical changes included, but were not limited to, replacing generator and economizer tubes at Unit 5, replacing waterwall tubes, elements of the superheater and rebuilding the precipitator at Unit 4; and replacing condenser tubes, superheater and rebuilding the pulverizer at Unit 3. These and other physical changes or changes in the method of operation resulted in significant net emission increases, as defined by 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: nitrogen oxides, sulfur dioxide, carbon monoxide, and/or particulate matter.

66. Defendants continue to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD regulations set forth in 40 C.F.R. § 52.21 and in the Michigan State Implementation

Plan, Mich. Admin. Code § 336.2801, *et seq.*, by, *inter alia*, their continuing failure to obtain the required PSD permit and Permit to Install for major modifications to the De Young Plant. In addition, Defendants are in continuing violation of requirements to comply with best available control technology, demonstrate that construction or modification will not cause or contribute to air pollution in violation of any NAAQS or any specified incremental amount, and perform an analysis of the ambient air quality in the area, as required by 40 C.F.R. § 52.21(m) and Mich. Admin. Code § 336.2811, 336.2813.

67. Based upon the foregoing, Defendants have violated and continue to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, Mich. Admin. Code r. 336.2801 *et seq.*, and Mich. Admin. Code r. 336.1201(1). Unless restrained by an order of this court, these and similar violations of the PSD provisions of the Act and Michigan's SIP will continue at the De Young Plant.

68. The violations set forth above subject Defendants to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## SECOND CLAIM FOR RELIEF
(Commencing Construction of a Major Modification Without an NNSR Permit)

69. Paragraphs 1 through 63 and 65 are realleged and incorporated herein by reference.

70. Defendants commenced construction of one or more major modifications between June 15, 2004 and May 16, 2007 at the De Young Plant without obtaining a NNSR permit. Each such major modification resulted in significant net emission increases of nitrogen oxides (NOx).

71. Defendants violated the Act by their failure to obtain the required NNSR permit and Permit to Install for major modifications that significantly increased NOx emissions made between June 15, 2004 and May 16, 2007.

### THIRD CLAIM FOR RELIEF
(Violations of the Continuing Obligation to Comply with Emission Limits in 40 C.F.R. parts 60 and 61, Best Available Control Technology, Lowest Achievable Emission Rates, and Emission Off-Sets)

72. Paragraphs 1 through 63 and 65 are realleged and incorporated herein by reference.

73. Beginning on the date that construction commenced for each of the modifications above, and continuing on each day of operation, the De Young Plant failed to comply with 40 C.F.R. parts 60 and 61 and BACT.

74. Additionally, each day after Defendants commenced construction of a major modification that resulted in a significant net emission increase of NOx following designation of Ottawa County as a nonattainment area for ozone, constituted failure to comply with Lowest Achievable Emission Rates and to off-set increased emissions pursuant to 42 U.S.C. § 7503, 40 C.F.R. § 51.165 and part 51, Appendix S, and Rule 220 of the Michigan SIP.

### FOURTH CLAIM FOR RELIEF
(Violations of Clean Air Act Title V and the Renewable Operating Permit Program)

75. Paragraphs 1 through 63 and 65 are realleged and incorporated herein by reference.

76. Defendants violated Title V of the Clean Air Act and the provisions of its Renewable Operating Permit (ROP) by failing to operate the source in compliance with the terms and conditions of the ROP. By failing to obtain a PTI for each of the modifications made after

the De Young Plant received its first ROP, Defendants failed to comply with the ROP's requirement prohibiting modification of a process or process equipment unless a PTI authorizing such action has been issued.  42 U.S.C. § 7661a; Mich. Admin. Code r. 336.1210(1).

77. By failing to identify case-by-case MACT requirements and failing to propose a schedule of compliance to meet those requirements, Defendants violated Title V of the Act.  42 U.S.C. § 7661b(b); 40 C.F.R. § 70.5(c)(8).

78. Defendants also violated Title V and the ROP program by failing to apply for a modification to the ROP for the modifications made after the Plant received its first ROP and by failing to include a compliance plan.  42 U.S.C. §§ 7661a, 7661b; 40 C.F.R. § 70.5; Mich. Admin. Code r. 336.1201, 336.1215, 336.1216(2) and (3); and Mich. Stat. § 334.5507(1)(f).

79. Defendants violated Title V, the ROP, and the ROP Program by failing to report the modifications made after the first ROP was issued and by providing certifications indicating compliance with the ROP when the facility was not, in fact, in compliance.  42 U.S.C. § 7661a, Mich. Admin. Code r. 336.1210.

**FIFTH CLAIM FOR RELIEF**
(Violation of the Requirement to Submit a Part 2 MACT Hammer Application)

80. Paragraphs 1 through 63 and 65 are realleged and incorporated herein by reference.

81. Defendants violated the Act by failing to submit an application to the State of Michigan and the U.S. EPA seeking a case-by-case hazardous air pollutant limit (MACT limit) to be included in the ROP.  42 U.S.C. § 7412(j)(2); 40 C.F.R. § 63.52.

## SIXTH CLAIM FOR RELIEF
(Declaratory Relief)

82. Paragraphs 1 through 63 and 65 are realleged and incorporated herein by reference.

83. Pursuant to 28 U.S.C. §§ 2201 and 2202, Sierra Club is entitled to a declaration that Defendants violated the Act by commencing one or more major modifications of the De Young Plant without a PSD permit or an NNSR permit, that the De Young Plant is a modified source for purposes of the PSD and/or NNSR programs, and such further necessary or proper relief as may be granted by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sierra Club respectfully prays for this Court to:

A. Declare that the Defendants were required to obtain a PSD permit and a PTI for the changes to the De Young Plant described above;

B. Declare that the Defendants were required to obtain an NNSR permit for the changes to the De Young Plant described above;

C. Declare that the De Young Plant is a modified source for purposes of the PSD program and the NNSR program;

D. Enjoin Defendants from operating the De Young Plant unless and until Defendants apply for and obtain a lawfully-issued PSD permit, PTI, and NNSR permit;

E. Order the Defendants to immediately comply with the statutory and regulatory requirements cited in this Amended Complaint;

  F. Order the Defendants to remedy their past violations by, *inter alia*, requiring the Defendants to install, as appropriate, the necessary pollution controls to meet best available control technology emission limits and lowest achievable emission rates;

  G. Order the Defendants to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Act alleged above;

  H. Order the Defendants to conduct audits of their operations to determine if any additional modifications have occurred that would require them to meet the PSD requirements and/or NNSR requirements and to report the results of these audits to Sierra Club and the EPA;

  I. Order the Defendants to disgorge profits and other benefits that were improperly obtained through, or as a direct result of, the violations set forth herein;

  J. Order the Defendants to pay civil penalties, including a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2) that will reduce pollution in the immediate vicinity of the DeYoung plant, where Sierra Club's members work, live, and recreate and, therefore, improve the air quality that is harming Sierra Club's members;

  K. Order the Defendants to pay Sierra Club's costs of this action, including reasonable attorney fees, pursuant to CAA § 304(d), 42 U.S.C. § 7604(d);

  L. Retain jurisdiction over this action to ensure compliance with the Court's Order; and

  M. Any other relief that the Court finds is just and equitable.

Respectfully submitted this 10th day of March, 2009.

          CULLEN WESTON PINES & BACH LLP

          s/ Lester A. Pines
          _____
          Lester A. Pines
          Wisconsin State Bar No. 1016543
          Kira E. Loehr
          Wisconsin State Bar No. 1042899
          122 West Washington Avenue, Suite 900
          Madison, WI 53703
          Telephone: (608) 251-0101
          Facsimile:  (608) 251-2883
          pines@cwpb.com
          loehr@cwpb.com

          GARVEY MCNEIL & MCGILLIVRAY, S.C.
          David C. Bender
          Wisconsin State Bar No. 1046012
          Christa Westerberg
          Wisconsin State Bar No. 1040530
          634 W. Main Street, Ste 101
          Madison, WI 53703
          Telephone: (608) 256-1003
          Facsimile: (608) 256-0933
          bender@gmmattorneys.com
          westerberg@gmmattorneys.com

          *Attorneys for the Plaintiff Sierra Club*