# **EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SIERRA CLUB, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) **Civil Action No. 1:08-cv-1183** <br> CITY OF HOLLAND, MICHIGAN and ) Paul L. Maloney <br> HOLLAND BOARD OF PUBLIC WORKS ) Chief U.S. District Judge <br> ) <br> Defendants. ) <br> ) | |

### SIERRA CLUB THIRD SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM CITY OF HOLLAND, MICHIGAN AND HOLLAND BOARD OF PUBLIC WORKS

Plaintiff Sierra Club, by and through its attorneys, hereby submits its Third Supplemental Response to the First Set of Interrogatories from Defendants City of Holland, Michigan and Holland Board of Public Works (collectively the "City of Holland") as follows. These responses are subject to the following General Objections, each of which are incorporated by reference in the responses below as if fully restated therein. Sierra Club reserves the right to amend, supplement, correct, or clarify responses if other or additional information is obtained, and to interpose additional objections if deemed necessary.

### GENERAL OBJECTIONS

1. Sierra Club objects to the extent the Interrogatories, including the instructions and definitions included therein, attempt to impose upon Sierra Club obligations different from, or in excess of, those imposed by the Federal Rules of Civil Procedure or by the Court.

2. Sierra Club objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges and

protections. Sierra Club hereby claims all applicable privileges and protections to the fullest extent implicated by the Interrogatories and excludes privileged information and materials from its response. Any disclosure of such information or materials as a result of these responses is inadvertent and is not intended to waive any applicable privileges or protections.

3. Sierra Club objects to the extent Defendants seek the conclusions and analysis of expert witnesses for Sierra Club prior to the deadline for disclosing experts and expert reports.

4. Sierra Club reserves all objections as to relevance and materiality. Sierra Club submits these responses to the Interrogatories without conceding the relevancy or materiality of the information or materials sought or produced, or their subject matter, and without prejudice to its right to object to further discovery, or to object to the admissibility of proof on the subject matter of any response. Any disclosure of information not responsive to the Interrogatories is inadvertent and is not intended to waive the right of Sierra Club not to produce similar or related information.

5. Sierra Club objects to the Interrogatories to the extent they call for identification of, or information contained in or derived from: (a) news articles, trade press reports, published industry services or reference materials, or similar publicly available sources that are available to Defendants; (b) materials that are part of the public record in any legislative, judicial, or administrative proceeding and reasonably available to Defendants; (c) materials generated by Defendants and thus presumably in the possession, custody, or control of Defendants; or (d) materials otherwise available to Defendants where response to Interrogatories would impose unnecessary or unjust burdens or expense on Sierra Club under the circumstances.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 3:** *Identify each and every one of the "one or more major modifications, as defined in the Act, at the De Young Plant" since 1988 as alleged in Paragraph 65 of your First Amended Complaint, including the date and location of each such major modification.*

**RESPONSE TO INTERROGATORY NO. 3:** Sierra Club is still gathering information on modifications made at the De Young Plant. The information available to Sierra Club at this time indicates the following major modifications occurred at the De Young Plant.

1. In 1988, Defendants conducted a major overhaul on Unit 4 that included the replacement of waterwall tubing that was corroded and at the end of its useful life as well as replacement of inner and outer elements of the superheater. The work was performed by outside contractors. The cost was approximately $250,000, paid from capital funds.

2. In 1991, Defendants conducted a major overhaul on Unit 3 that included the replacement of the superheater and retubing of the condenser. The cost was approximately $400,000, paid from capital funds.

3. In 1991, Defendants conducted a major overhaul on Unit 4 that included the replacement of retaining rings, superheater tubes, and internal stack lining and the refurbishment of the enclosure due to deterioration. The work was performed by outside contractors. The cost was approximately $266,000, paid from capital funds.

4. In 1997, Defendants conducted a major overhaul on Unit 4 that included rebuilding the precipitator and installing superheater tubing. The cost was approximately $600,000, paid from capital funds.

5.  In 1998, Defendants rebuilt the pulverizer on Unit 3. The cost was approximately $500,000, paid from capital funds.

6.  In 2002, Defendants conducted generating and economizer tube replacement on Unit 5 to increase heat transfer efficiency and extend the lifespan of the heat exchangers in order to correct repeated system failure. The work was performed by outside contractors. The cost was approximately $60,000, paid from capital funds.

7.  In 2003, Defendants conducted a major overhaul on Unit 5 that included major outage boiler and major overhaul generator work and replacement of generating tubes and the top fifty feet of the smokestack. The purpose of the work was to "ensure continued reliable operations." The improvements were performed by outside contractors. The cost was approximately $750,000, paid from capital funds.

8.  In 2004-05, Defendants conducted a major overhaul on Unit 3 that included improvements to the fuel system, replacement of the boiler refractory and circulating water pump, and repair of the exhaust system. These repairs were intended to extend the useful life of the facility. The work was performed by outside contractors. The cost was approximately $676,000, paid from capital funds.

9.  In 2005, Defendants conducted a major overhaul on Unit 4 that included major repairs to low pressure diaphragms necessitated by severe damage from water. The parts were manufactured off-site and the work was performed by outside contractors. The cost was approximately $606,000, paid from capital funds.

10.  In 2007, Defendants upgraded the generator excitation system and replaced original equipment from both Unit 4 and Unit 5 at a cost of approximately $360,000. The work was performed by outside contractors.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:** Sierra Club is still gathering information on modifications made at the De Young Plant. The information Sierra Club has reviewed since the original response was submitted indicates the following major modifications occurred at the De Young Plant in addition to the modifications identified in Sierra Club's original response to Interrogatory No. 3:

11. In 1990, Defendants replaced economizer tubes, generating tubes, superheater elements at Unit 5. The cost was approximately $170,000 and was approved separately by the Board.

12. In 1990, Defendants replaced boiler tubes at Unit 5 using outside contractors. The cost was approximately $124,000 and was approved separately by the Board.

13. In 1990, Defendants installed a second boiler feed at Unit 3. The cost was approximately $67,000 and was approved separately by the Board.

14. In 1996, Defendants replaced all 31 rows of superheater elements at Unit 3. The purpose of replacing the tubes was to improve the reliability of the unit. Outside contractors performed the work. Cost was approximately $188,000, paid from capital funds, and was approved separately by the Board.

15. In 1996, Defendants overhauled the turbine at Unit 3 including removing and replacing rotor bucket stages 2 through 5. Outside contractors performed the work. Cost was approximately $130,000, paid from capital funds, and was approved separately by the Board.

16. In 2000, Defendants replaced the condenser tubes at Unit 5. Cost was approximately $200,000 and was approved separately by the Board.

Dated this 19th day of July, 2010.

I, Anne Woiwode, am the Director of the Sierra Club Michigan Chapter. I have read Sierra Club's Third Supplemental Responses to the First Set of Interrogatories from the City of Holland, Michigan and Holland Board of Public Works (Responses) and know the contents thereof. The Responses were prepared with the assistance and advice of counsel upon whose advice I have relied. The answers set forth in the Responses are not necessarily within my personal knowledge. The Responses are based upon information assembled by authorized employees of Sierra Club, Sierra Club volunteers and/or counsel representing Sierra Club. The answers, subject to inadvertent or undiscovered errors, are based on and limited by existing records and information, presently recollected and thus far discovered during the preparation of the answers. I consequently reserve the right to make any changes in the Responses if it appears at any time that omissions or errors have been made. Subject to these limitations, the Responses are true to the best of my knowledge, information, or belief, and I am authorized to answer these interrogatories on behalf of Sierra Club.

_____
Anne Woiwode

AS TO OBJECTIONS:

CULLEN WESTON PINES & BACH LLP

_____
Lester A. Pines
Kira E. Loehr
122 West Washington Avenue, Suite 900
Madison, WI 53703
Telephone: (608) 251-0101
Facsimile: (608) 251-2883
pines@cwpb.com
loehr@cwpb.com

6

MCGILLIVRAY WESTERBERG & BENDER LLC

David C. Bender
Christa Westerberg
305 S. Paterson Street
Madison, WI 53703
Telephone: (608) 310-3560
Facsimile: (608) 310-3561
bender@mwbattorneys.com
westerberg@mwbattorneys.com